IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

FILED
AUG - 1 2006
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SECURENET CO, LTD., *Plaintiff*, | ) | |
| v. | ) | No. 06-564 C |
| UNITED STATES, *Defendant*. | ) | Judge ____________ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff SecureNet Co., Ltd. ("SecureNet") as and for their complaint against the United States Government alleges as follows:

**INTRODUCTION**

1. This is a post-award bid protest over which this court has jurisdiction pursuant to 28 U.S.C. § 2891(b). This action is brought to obtain an injunction ordering the suspension of performance and termination of a contract on the basis that such contract was awarded in violation of applicable procurement laws and regulations. Plaintiff will be filing an Application for a Preliminary Injunction. Plaintiff hereby gives notice pursuant to Rule 44.1 of the RCFC that it will be raising issues with respect to the laws of the Republic of Korea.

## NATURE OF THE ACTION

2. Plaintiff seeks to (1) enjoin the performance of a contract (the "Contract"), awarded on or about April 28, 2006 to Joeun Systems, Co. Ltd. ("Joeun"), Woori Venture Town 3rd Fl., 82-29, Mullae-Dong, 3-Ga, Yeoungdeungpo-Gu, Seoul, Korea, by the United States Army, acting through the United States Central Contracting Command Korea ("Army"), pursuant to Solicitation No. W91QVN-06-R-0062 ("Third Solicitation"); (2) compel the Army to reevaluate the solicitations in compliance with federal law; and (3) award SecureNet costs and fees, including those incurred in the preparation of its bid, in accordance with law.

3. The Contract provides for the performance of security services for the U.S. Armed Forces throughout the Korean Peninsula (the "Services") for a period of five years--one base year and four option years. This was the third contract award for the Services in a period of about eight months--SecureNet was twice awarded the contracts from the two previous solicitations, which contracts were subsequently terminated for convenience (SecureNet performed a total of about one month on the two contracts). The Contract was awarded

to Joeun after the Army arbitrarily and capriciously determined that Joeun complied with the terms and evaluation criteria of the Third Solicitation, that the bid complied with Korean law and that Joeun was a technically acceptable bidder.

4. The Army awarded the Contract to Joeun in violation of 10 U.S.C. § 2305(b)(1), and FAR 1.602-2(b). Specifically, the Army failed to award the Contract based solely on the factors set forth in the Third Solicitation, and failed to conduct the bidding process in a fair and impartial manner.

## JURISDICTION

5. This Court has jurisdiction over this post-award bid protest pursuant to 28 U.S.C. § 1491(b).

## THE PARTIES

6. Plaintiff SecureNet is a company organized under the laws of the Republic of Korea. Its principal business address is Hoseo Plaza, #680-3 Deungchon-Dong, Gangseo-Gu, Seoul, Korea. SecureNet participated in the Third Solicitation, was the second lowest, technically acceptable bidder, and would have maintained its previous contract, if the Army had complied with its legal obligations in conducting the bidding process and evaluating the bids.

SecureNet is thus an "interested party" entitled to challenge the award and violations of statutes, regulations and other applicable procurement law pursuant to 28 U.S.C. §1491(b).

7. SecureNet will suffer irreparable injury in the form of the loss of profits if the Defendant is not enjoined from further performance under the Contract.

8. The Defendant is the United States of America, acting by and through the U.S. Army and its contracting arm in Korea, the United States Contracting Command Korea.

## FACTUAL ALLEGATIONS

9. SecureNet is one of the leading providers of security services in Korea. On May 25, 2005, the Army announced a solicitation, W91QVN-05-R-0087, for the performance of the Services ("First Solicitation"). SecureNet submitted a proposal and was selected as the low technically acceptable bidder on the First Solicitation. It was awarded a five-year contract for the Services on August 19, 2005 ("First Contract"). On November 15, 2005, the Army terminated the First Contract for convenience, but refused to discuss the reasons for the termination with SecureNet.

10. On December 23, 2005, the Army announced a re-solicitation of the

Services ("Second Solicitation"). SecureNet was again determined to be the low technically acceptable bidder. On January 27, 2006, SecureNet was awarded the Second Contract. Without prior consultation with SecureNet, on or before March 9, 2005, the Army decided to run yet another solicitation ("Third Solicitation"), by amending the Second Solicitation. The Army kept SecureNet bound to the Second Contract, although SecureNet was unable to perform, pursuant to a Stay Work Order ("SWO") issued by Defendant. When the Third Solicitation finally resulted in a bidder other than SecureNet winning, the Army terminated the Second Contract for convenience.

11. Although none of this was disclosed to SecureNet at the time, the purported reason for the Third Solicitation was that it was a corrective measure for an alleged ambiguity in the Second Solicitation. The re-solicitation was meant to address primarily only the issues raised by the alleged ambiguity. Accordingly, the solicitation was limited to parties who had bid on the Second Solicitation, was open only for three days, and changes to proposals were limited to the portions of the proposal affected by Amendment 0007.

***The Terms of the Third Solicitation***

12. The terms of the three Solicitations were of course very similar. The

Second and Third Solicitations were identical, except for the changes contained in Amendment 0007. The Second Solicitation required a bidder to submit three volumes: a Management Proposal, a Technical Proposal (including a Staffing Plan) and "Section B of Solicitation", a price proposal. The Third Solicitation only allowed the bidders to submit those portions of their proposal that were affected by the changes contained in Amendment 0007.

***Changes Contained in Amendment 0007***

13. The primary change accomplished by Amendment 0007 was to increase significantly the number of supervisors required to perform the Services, for the first time specifying the number of supervisor hours to be provided under the contract. There were additional smaller changes to the technical proposal as well. Amendment 0007 warned, in bold letters, underlined: Offerors may submit only those portions of their proposals affected by this amendment.

***Amendment 0009***

14. Amendment 0009 was promulgated on March 16, 2006. It did not change any terms of the Third Solicitation, but rather provided answers to questions posed by bidders. Amendment 0009 stated: "Offerors may submit a revised price & technical proposal or may submit only the Staffing Plan and

revised price proposal according to Amendment 0007." The Staffing Plan was a sub-portion of the technical proposal; Amendment 0007 effected changes throughout the technical proposal, but most significantly in the Staffing Plan. This Amendment made clear that Amendment 0007 allowed the parties to submit either a revised price & technical proposal or just a revised Staffing Plan and price proposal. It did not alter the plain terms of Amendment 0007, and did not allow the parties to change portions of their proposal unaffected by Amendment 0007.

15. On April 28, 2006, the Contract was awarded to Joeun at a price over five years of KRW 144,774,723,550 (USD 120,125,061.03). The solicitation expressly stated that the proposals were to be evaluated based on the price for the five-years of the contract, including the four option years.

***Joeun's Proposal Violated the Terms of the Solicitation and Korean Labor Law***

16. The Third Solicitation required the offerors' proposals to comply with Korean labor law. *Clause 52.0000-4404 Korean Labor Law, Section H - Special Contract Requirements of the Solicitation.* Under Korean law, employees may not work more than 40 hours per week, with a maximum of 12

hours overtime. Overtime must be paid at least 150% of the standard hourly wage in accordance with Article 55 of the Korean Labor Standards Act. Joeun based its bid on having its workers work many more than 40 hours per week, but without providing for payment of overtime. Joeun also clearly revised portions of its bid beyond that allowed by Amendment 0007, as they added supervisors, but applying its loaded rate to the number of supervisors added again results in a number well beyond the increase in their bid price from Solicitation 2 to Solicitation 3.

17. The record indicates that Joeun's proposal was based on having its workers work far more than 40 hours per week, without payment of *any* overtime. If Joeun's proposal had complied with Korean labor law, its price over five years would have had to have been raised approximately $15-20 million, which would have resulted in SecureNet being awarded the contract for yet a third time.

## CLAIMS FOR RELIEF

**Count I:**

**The Army's Failure To Follow Applicable Procurement Regulations In Requesting Revised Proposals As A Result Of Earlier Bid Protests Provided Other Offerors With An Unwarranted Competitive Advantage, And Was Therefore Arbitrary, Capricious, An Abuse Of Discretion And Contrary To Law.**

18. Paragraphs 1 through 17 are incorporated by reference as if set forth herein.

19. Under FAR 33.104(a), agencies are required to "[i]mmediately . . . give notice of the protest to the contractor if the award has been made," and to "furnish copies of the protest submissions to such parties with instructions to (i) communicate directly with the GAO, and (ii) provide copies of any such communication to the agency and to other participating parties when they become known."

20. FAR 15.507 also requires that if an agency issues a new request for revised proposals as a result of a bid protest, the contracting officer *shall* provide the following information to *all* offerors that were in the competitive range and are requested to submit revised proposals:

> "Information provided to unsuccessful offerors in any debriefings conducted on the original award regarding the successful offeror's proposal"; and

"Other nonproprietary information that would have been provided to the original offerors."

21. Following the original awards to SecureNet on August 19, 2005 and January 27, 2006, the Army provided debriefings to a number of unsuccessful offerors that included information regarding SecureNet's winning price and other aspects of the original evaluation. On or about August 31, 2005, one of the unsuccessful offerors filed a bid protest against the first award to SecureNet. On February 4 and 10 2006, two of the unsuccessful offerors filed bid protests against the second award to SecureNet. Despite its obligation under FAR 33.104, the Army did not notify SecureNet of the February 10 2006 bid protest against the second award to SecureNet, and did not provide SecureNet with copies of the protests or other submissions related to these earlier protests.

22. As a result of the February 10, 2006 bid protest filed against the original award to SecureNet, the Army elected on March 13, 2006, to issue a new request for revised proposals. Despite its obligations under the FAR, the Army never provided SecureNet with any of the information that had been provided to other offerors at their debriefings prior to this request for revised proposals. Thus, while the other offerors were given detailed information regarding SecureNet's price and other aspects of the evaluation, SecureNet was not

provided with any comparable information prior to submitting its revised proposal.

23. By providing other offerors with information about the previous evaluation, including SecureNet's winning price, which was the key factor in the agency's "lowest priced, technically acceptable" award criteria; and by failing to provide SecureNet with any comparable information prior to soliciting revised proposals, as required under the FAR, the Army provided other offerors with an unfair competitive advantage in the re-opened competition.

24. The Army's failure to follow applicable regulations, and to take adequate steps to ensure a level playing field, resulted in an unfair competitive advantage to other offerors in the request for revised proposals, and was therefore arbitrary, capricious, an abuse of discretion and contrary to law.

**Count II:**

**The Army's Award To A Contractor Who Proposed Violating Korean Labor Law, In Violation Of The Terms Of The RFP, Was Arbitrary, Capricious, An Abuse Of Discretion And Contrary To Law.**

25. Paragraphs 1 through 24 are incorporated by reference as if set forth herein.

26. The purpose of the Solicitations was to acquire security guard services throughout the Republic of Korea. Thus, the Solicitations incorporated clause

FAR 52.0000-4404, "KOREAN LABOR LAW," which provides:

> Contractor shall honor employees' rights in full compliance with Korean Labor Law, including the rights of succession of employment. Failure to comply may be deemed breach or default of the contract and evidence of nonresponsibility. Such violation of Korean Labor Law may be evidenced by a Republic of Korea Ministry of Labor determination, a court decision, or a Labor Relations Commission adjudication. If a contractor is found to be in serious violation and fails to take adequate corrective action promptly, USFK may consider this grounds for determining the contractor to be non-responsible for future Government contracts.

27. Thus, under the terms of the RFP, offerors were clearly required to structure their proposals – including staffing and pricing proposals – in a manner that was consistent with Korean labor law.

28. Despite this requirement, the Army awarded to a contractor whose proposal, on information and belief, does not comply with the requirements of Korean law regarding working hours and payment of overtime, and who instead proposes to have its workers work far more than the number of hours permitted under Korean law, without payment of overtime.

29. The Army's decision to award to a contractor that does not comply with Korean labor law was inconsistent with the terms of the RFP, unfair to other offerors whose proposals complied with these requirements, and was therefore

arbitrary, capricious, an abuse of discretion and contrary to law.

**Count III:**

**The Army's Failure To Consider The Risk Associated With The Awardee's Proposed Staffing Approach, As Required Under The RFP, Was Arbitrary, Capricious, An Abuse Of Discretion And Contrary To Law.**

30. Paragraphs 1 through 29 are incorporated by reference as if set forth herein.

31. The Solicitation required the Army to evaluate all offerors' management plans "on an acceptable or unacceptable basis" to determine "the offeror's feasibility of approach and the Government's *perceived risk of unsuccessful performance*." Solicitation, Section M, Factor A (emphasis added).

32. The Solicitation also required the Army evaluate all offerors' proposed technical approach "on an acceptable or unacceptable basis" to determine "the offeror's feasibility of approach and the Government's *perceived risk of unsuccessful performance*." Solicitation, Section M, Factor B (emphasis added).

33. In this case, on information and belief, the awardee's proposal calls for employees to accept far less than they are required to be paid under Korean law, both with respect to overtime compensation and base compensation. Despite the obvious risks to the awardee's ability to perform, the Army failed to

take the awardee's use of overtime into account when evaluating the risks associated with its management and technical plans. Instead, on information and belief, the Army considered awardee's approach acceptable so long as it satisfied the constraint that offerors not require more than 12 consecutive hours of work, without any other consideration of the performance risks associated with the awardee's proposed use of overtime.

34. The Army's failure to consider the performance risks associated with the awardee's proposed use of overtime was inconsistent with the terms of the RFP, and was therefore arbitrary, capricious, an abuse of discretion and contrary to law.

**Count IV:**

**The Army's Failure To Conduct An Adequate Price Analysis, As Required Under The RFP, Was Arbitrary, Capricious, An Abuse Of Discretion And Contrary To Law.**

35. Paragraphs 1 through 34 are incorporated by reference as if set forth herein.

36. Under the Solicitation, all offerors were required to demonstrate that their proposed prices were (a) "adequate," meaning that "[t]he proposed price and the scope of work are compatible"; (b) "reasonable and realistic," meaning that the "price is reasonable if, in its nature and amount, it does not exceed that

which would be incurred by a prudent person in the conduct of competitive business"; and (c) "complete," meaning that the price was "[r]esponsive to all RFP requirements, all Contract Line Items (CLINs) are included, and estimates can be traced without mathematical errors." Solicitation, Section L (emphasis added).

37. Consistent with these requirements, the Solicitation required the Army to evaluate all offerors' proposed prices "to determine the extent to which it is adequate, reasonable, and complete." Solicitation, Section M, Factor B.

38. In this case, on information and belief, the awardee's proposal calls for employees to accept far less than they are required to be paid under Korean law, both with respect to overtime compensation and base compensation. Although the RFP required the Army to consider whether the awardee's prices were "adequate, reasonable, and complete" for the work required, the Army ignored the impact of the awardee's non-compliance with Korean labor law in its evaluation of price. As a result, awardee's proposed price is, on information and belief, understated by anywhere from $15-20 million - more than 10% of the value of the contract.

39. This failure to evaluate the awardee's proposed price was inconsistent

with the terms of the Solicitation, and was therefore arbitrary, capricious, an abuse of discretion and contrary to law.

**Count V:**

**The Army's Conduct Of The Solicitations Violated Its Statutory Obligations Of Providing Contractors Impartial, Fair And Equitable Treatment.**

40. Paragraphs 1 through 39 are incorporated by reference as if set forth herein.

41. Under FAR 1.602-2(b), the public procurement officer is charged with the duty to "[e]nsure that contractors receive impartial, fair and equitable treatment." The goal of an open and impartial competition applies to each stage of the procurement process. Defendant failed to comply with its obligations in a number of respects. SecureNet won the contract for the Services in this case twice, in open and fair bidding. By failing to enforce the terms of its own solicitation, by compelling SecureNet to compete three times for the same contract, and by treating SecureNet in a manner inconsistent with its more favorable treatment of other contractors, Defendant violated its obligations under law and failed to protect the integrity of the bidding process.

42. Defendant did not conduct a fair solicitation when it allowed one bidder to submit a proposal that did not comply with the obligations of Korean labor law

and other terms of the solicitation. If Defendant were to allow parties to submit bids that did not comply with Korean law, they were obligated to announce this publicly, so that all parties could compete on a fair, impartial basis. If Defendant were to allow a bidder to revise any and all portions of its proposal, it was obligated to announce this clearly and publicly, so that all parties could compete on a fair, impartial basis.

43. The entire history of the solicitation of the contract for the Services demonstrates repeated instances where Defendant's treatment of SecureNet was considerably less favorable than its treatment of other contractors in similar situations. When a bid protest was raised against the First Contract, Defendant did not provide SecureNet a copy of the protest as required by 4 C.F.R. § 21.3(a), and refused to speak with SecureNet about the protest, indicating that they could not, since the contract was under the SWO. The protest was dismissed, the SWO lifted, then before full implementation of the contract, Defendant terminated the contract for convenience and refused to speak with SecureNet about the termination, but communicated with the incumbent contractor. When the incumbent contractor raised a bid protest after award of the second SecureNet contract, Defendant again failed to provide

SecureNet a copy of the bid protest, and did not even alert SecureNet to the existence of the protest. Defendant agreed with the incumbent contractor to take corrective action with respect to their complaints, and requested that GAO dismiss the protests in light of the corrective action to be taken, all without speaking to SecureNet.

44. In contrast to its treatment of SecureNet with respect to the bid protests brought against the two SecureNet contracts, when SecureNet raised its bid protest in the GAO proceeding, Defendant not only alerted Joeun to the existence of the bid protest, it actively worked with Joeun to coordinate a defense against SecureNet's bid protest, advising Joeun to obtain an opinion from the Korean Ministry of Finance with respect to the legality of Joeun's bid. (The Ministry of Finance's opinion did not establish the legality of Joeun's bid, at least not with respect to the violations established by SecureNet).

45. By forcing SecureNet to compete three times for the same contract, alerting all the parties to the target they had to beat, and by treating other contractors more favorably than SecureNet throughout the process, Defendant violated its legal obligations, and abused its discretion. The release of bid information is severely prejudicial to the party whose information is released, as

it is no longer competing on a level playing field. This is only common sense. SecureNet has been forced to win an initially fair competition, and then bid against itself twice, with its prior bid numbers and other important information made available to the other bidders both times.

46. Initially Defendant took action to protect the integrity of the results of the Second Solicitation by limiting the Third Solicitation to persons who had participated in the Second Solicitation, and by limiting changes to the proposals to those items affected by Amendment 0007 of the Third Solicitation. When it allowed one party to be awarded the contract unrestrained by the announced limitations, it did not conduct the Solicitation in compliance with its obligations.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff SecureNet respectfully requests this Court to grant judgment in its favor, and to grant SecureNet a judgment providing the following:

1. A Declaration that the Contract was awarded contrary to applicable procurement laws and regulations;
2. A preliminary and permanent injunction ordering Defendant to suspend performance of, and to terminate the Contract;

3. Ordering Defendant to re-evaluate the proposals submitted for the Third Solicitation in compliance with applicable procurement laws and regulations;

4. In the alternative to ordering a re-evaluation of the proposals, ordering Defendant to cause a re-solicitation of a contract for the Services;

5. Awarding Plaintiff its costs and attorneys' fees incurred in the prosecution of this action, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412 or as otherwise allowed by law; and

6. Such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

Rand L. Allen
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC
(202) 719-7329 (O)
(202) 719-7049 (F)

*Counsel for Plaintiff*

August 1, 2006

*Of counsel:*

Thomas J. Seymour
KIM & CHANG
Seyang Building
223 Naeja-Dong, Jongro-Gu
Seoul, Korea 110-720
(+82-2) 3703-9092

Kevin Maynard
Antonella Karlin
WILEY REIN & FIELDING LLP
(202) 719-3143 (O)
(202) 719-7049 (F)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August, 2006, I caused copies of the foregoing to be served by hand-delivery on the following:

Michael Austin
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street NW
8th Floor
Washington DC 20530

Rand L. Allen
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC
(202) 719-7329 (O)
(202) 719-7049 (F)

*Counsel for Plaintiff*